Matter of the Application of HARRY J. MURPHY, for an Order Directing the Board of Elections of the City of New York to Print His Name upon the Official Ballot at the General Election to be Held on November 4, 1919, as a Candidate of the Home Rule Party for the Office of Member of Assembly for the Sixteenth Assembly District, New York County.

(Supreme Court, New York Special Term, October, 1919.)

Election Law, § 125 — duty of boards of elections — when certificate of nomination defective — when application in a summary proceeding to have name of a candidate printed on the ballot denied — validity of certificate of nomination.

While it is the duty of a board of elections to see that no name is improperly placed in nomination, it cannot, before registration is complete, finally decide whether or not a candidate's name should appear on the official ballot.

It is obviously impracticable for a board of elections, in the first instance, to procure a judicial determination of all questions arising with reference to the validity of every certificate of nomination, and where the board finds, on inspection, that a certificate of nomination is apparently so defective as to make it improper that the name of the candidate should be printed on the official ballot, orderly procedure requires that the board cause the candidate to be notified that his name will not so appear and leave it to him, if so advised, to apply to the court under section 125 of the Election Law for such an order in the premises as justice requires.

Where, however, the candidate instead of making such an application elects to rest his case on a question of law invoking an obviously defective statute (Laws of 1898, chap. 335, § 56) to have the court order his name printed on the ballot in the face of serious and unanswered charges, his application in a summary proceeding for that relief will be denied, and the court need not inquire whether the action of the board of elections in refusing to place his name on the ballot was justified or not.

APPLICATION in a summary proceeding under the Election Law for an order requiring the board of elections to cause the name of a candidate to appear and be printed upon the official ballot.

H. & J. J. Lesser (Samuel F. Hyman and J. J. Lesser, of counsel), for application.

William P. Burr, corporation counsel, and Russell Lord Tarbox, opposed.

GAVEGAN, J. An application is made in a summary proceeding under the Election Law for an order requiring the board of elections to cause the name of Harry J. Murphy " to appear and be printed upon the official ballot, on the day of general election of 1919, as a candidate of the Home Rule party for the office of member of Assembly for the sixteenth Assembly

district, New York county.'' On September 2, 1919, the applicant filed with the board of elections a certificate of nomination on an independent ticket for the said office. It purports to be signed by 1,508 qualified electors. The requisite number is 928. On October 7, 1919, the board of elections wrote to the candidate '' advising '' him that his name would not appear upon the official ballot for the following reasons: (1) That many of the signatures, to said certificate, purport to have been taken before witnesses not qualified to act as such; and (2) that many of the signatures are forgeries.

No question of fact is now before me for determination. There is no occasion now for me to inquire whether or not the facts and circumstances justify the action of the board in refusing to place the name Harry J. Murphy on the ballot. He now challenges the power of the board to take that action. He contends that if the board believes the facts and circumstances are such as to make it improper to print his name on the ballot, its duty is to cause an application to be made to this court for an order directing that the name shall not be printed on the ballot.

On the other hand, the board of elections points to the practice which has prevailed in these cases. Having found the certificate, on inspection, to be apparently so defective as to make it improper that the name of the candidate for office should appear on the ballot, the board causes him to be notified that his name will not appear and leaves it to him, should he be so advised, to make an application to this court to consider and determine the matter.

Counsel for the candidate and for the candidate in the companion case point to a change in the law made in 1911.

Section 56 of chapter 335 of the Laws of 1898 reads,

in part, as follows: "Any questions arising with reference to any device, or to the political party or other name designated in any certificate of nomination filed pursuant to the provisions of this section, or of section fifty-seven of this article, or with reference to the construction, validity or legality of any such certificate, shall be determined in the first instance by the officer with whom such certificate of nomination is filed. Such decision shall be in writing, and a copy thereof shall be sent forthwith by mail by such officer to the committee, if any, named upon the face of such certificate, and also to each candidate nominated by any certificate of nomination affected by such decision. The supreme court, or any justice thereof, within the judicial district, or any county judge within his county, shall have summary jurisdiction upon complaint of any citizen, to review the determination and acts of such officer, and to make such order in the premises as justice may require." Chapter 654 of the Laws of 1901 did not alter the provisions quoted.

In 1911 an act known as chapter 649 of the Laws of 1911 amended the Election Law generally. Section 125, as amended by the Laws of 1913, chapter 820, and by the Laws of 1914, chapter 244, constitutes section 125 of the present Election Law and said section reads, in part, as follows: "Any question arising with reference to any device, or to the party or other name designated in any certificate filed pursuant to the provisions of this article, or with reference to the construction, sufficiency, validity or legality of any certificate, shall be determined upon the application of any citizen by the supreme court, or any justice thereof, within the judicial district, or any county judge within his county, who shall make such order in the premises as justice may require."

It is contended that, by the change referred to, the

legislature deprived the board of elections of the power, in the first instance, to determine questions with reference to the construction, sufficiency, validity or legality of certificates of nomination.

Looking at the matter from the point of view of those charged with the practical enforcement of the Election Law, it will be seen that the interpretation contended for by these candidates would make the Election Law unworkable. The number of nominating certificates is very large and the task of examining them by no means easy. The board of elections has, in addition, many other duties to perform. If the ground is to be covered in the short periods of time allowed, it is essential that some board or body be available to dispose of the very numerous questions constantly arising. This is necessary at least to the extent of passing on such questions in the performance of the duties of the board to enforce the Election Law (§ 190) —purely ministerial duties, in contrast with the judicial determination which may be required of the court under section 125 of the Election Law.

Being required to make the Election Law work in actual practice, it seems to me that the obvious procedure has been adopted by the board. Having discovered that the facts and circumstances appear to make it unlawful for the board to allow a candidate's name to be printed on the ballot, he is notified that his name will not appear on it. But he is left free to apply to the court for a determination of the matter, that is, for " such order in the premises as justice may require." Election Law, § 125.

The notice does not foreclose the candidate from enforcing what he may claim to be his rights. The action of the board is not a determination in the sense that it finally settles the matter. Section 125 of the Election Law provides that certain questions shall be

determined by the courts. The meaning of "to determine" is, of course, to ascertain definitely and to settle.

It does not seem possible that the legislature intended to deprive the board of elections of administrative powers and functions necessary to a practical working of the statute. It may be, as referred to on the argument, that in some cases the failure of the board to act in these cases until a late date might prejudice a candidate. And it may be that the law should be so amended as to avoid that possibility. It should be noted, however, that the board cannot, before registration is complete, finally decide whether or not the candidate's name should appear on the ticket. For no signatures of persons signing the certificate of nomination can be counted unless such persons shall subsequently register on the days provided for registration. Even at this writing the board is not in a position to determine how many of such persons have registered.

We have then a situation where the candidate, instead of moving for a determination on the merits, elects to rest his case on a question of law and invokes an obviously defective statute to have the court order his name printed on the ballot in the face of serious and unanswered charges. While it may be true that an earlier decision by the board would have rendered it less inconvenient for the candidate to assert such rights as he may claim to have, in an argument on the merits, this would not justify the court in making a decision having the effect of rendering the statute practically impossible of operation in most important respects. It is the duty of the board of elections to see that no name is improperly placed in nomination. It is obviously impracticable for the board, in the first instance, to procure a judicial determination of all

Supreme Court, October, 1919.          [Vol. 109.

questions arising with reference to the validity of every certificate of nomination — as to many of which questions the candidate himself might not be desirous of having a judicial inquiry.

In *Matter of Cahill,* 108 Misc. Rep. 449, decided by Mr. Justice Lydon, on an application to have declared void a ruling of the board of elections and to direct the board to print on the official primary ballot the names of certain candidates which, by said ruling, it had been declared were not entitled to a place on the ballot, it is said: " Ever since the board of elections was created it has undertaken to pass, in the first instance, upon all applications of this kind, and has in this way disposed of innumerable details which should not occupy the time of the courts. * * * To sustain the contention of the applicant would amount to holding that the board must receive any paper filed with it, regardless of its defects, which, in my opinion, the legislature never intended." This would appear to be the only solution of the matter which will enable the board to perform its functions under the statute in such a way as to protect the public interest. Furthermore, it appears that in *Matter of Burke,* N. Y. L. J. Aug. 22, 1919, Mr. Justice Hendrick followed the decision in *Matter of Cahill.* For the reasons stated I agree with those determinations. And, in any event, orderly procedure requires that I follow the practice so established. Accordingly the application is denied.

Application denied.